UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH HURST,
Plaintiff,
v.

ANGEL QUIROS, et al.,
Defendants.

No. 3:25-cv-2088 (SRU)

INITIAL REVIEW ORDER

The *pro se* plaintiff, Keith Hurst, is a sentenced inmate in the custody of the Connecticut

Department of Correction ("DOC") at Osborn Correctional Institution ("Osborn C.I.").[1]   He

asserts claims under 42 U.S.C. § 1983 against Connecticut DOC Commissioner Angel Quiros

and Osborn C.I. Warden Robert Martin.   Compl., Doc. No. 1.   He alleges that the defendants

violated the Eighth and Fourteenth Amendments and brings this suit against the defendants in

their individual and official capacities for damages.[2]   *Id.*

After initial review under 28 U.S.C. § 1915A, I dismiss Hurst's complaint without

prejudice.

---

[1] I may "take judicial notice of relevant matters of public record."   *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).   The publicly available DOC website shows that Hurst was sentenced on August 3, 2018, to a term that has not yet expired and that he is still housed at Osborn C.I.   *See* Inmate Information, Conn. State Dep't of Correction, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=391963 (last accessed June 3, 2026).
[2]   In this initial review under 28 U.S.C. § 1915A, I only consider whether Hurst states any plausible claims under 42 U.S.C. § 1983.   That is because the core purpose of an initial review order is to make an initial screening determination of whether the lawsuit may proceed in federal court and whether it should be served upon the named defendants.   If there are no facially plausible federal law claims against any of the named defendants, then the court should decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.   On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed via a motion to dismiss or motion for summary judgment.   More generally, a court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims via a motion to dismiss or motion for summary judgment.

1

### I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from that relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### II.    ALLEGATIONS

Hurst alleges the following facts, which I consider to be true for purposes of my initial review.

On the evening of November 28, 2025, Hurst, while in DOC custody, was attacked by another inmate with a broomstick. Compl., Doc. No. 1, at 3-4. As a result of the attack, Hurst sustained cuts, bruising, and loose teeth. *Id.* DOC staff had either failed to secure the utility closet or had provided the broom to the inmate who attacked Hurst. *Id.* at 4. DOC staff also failed to provide Hurst with medical attention after the attack. *Id.*

### III.   DISCUSSION

Hurst advances Eighth and Fourteenth Amendment claims against Commissioner Quiros and Warden Martin.   He seeks both monetary damages and an injunctive order.

### A.  Official Capacity Claims

I first address Hurst's request for an injunctive order against Commissioner Quiros and Warden Martin in their official capacities.   Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."   *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (citations omitted).   That means Hurst may only proceed against the defendants in their official capacity for injunctive relief if he alleges an ongoing constitutional violation.   *See Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011).

Here, Hurst alleges facts about an attack that occurred in the past.   No factual allegations suggest that Hurst is subject to an ongoing violation of his rights.   Therefore, Hurst has not alleged facts sufficient to support a plausible claim for injunctive relief against the defendants in their official capacities.

Hurst also cannot seek damages from the defendants in their official capacities for their alleged Eighth and Fourteenth Amendment violations.   A claim against a state defendant in their official capacity for monetary damages is barred by the Eleventh Amendment to the United States Constitution.   *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Therefore, Hurst's Eighth and Fourteenth Amendment claims against the defendants in their official capacities are dismissed.

**B. Individual Capacity Claims**

Hurst also seeks monetary damages from the defendants in their individual capacities. Specifically, he claims that the defendants violated the Eighth and Fourteenth Amendments through their deliberate indifference to his risk of harm from the inmate's attack and his need for medical attention after the attack.   Compl., Doc. No. 1, at 3-4.

A plaintiff seeking monetary damages from a defendant under section 1983 must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.   *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991).   That is true with respect to supervisory officials as well.   *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (explaining that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under section 1983). "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had."   *Id.*

**1. Fourteenth Amendment violation**

As a preliminary matter, I conclude that Hurst cannot proceed with his Fourteenth Amendment claims.   A pretrial detainee may assert a Fourteenth Amendment substantive due process claim to challenge unsafe conditions of confinement or a deprivation of medical care. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019).   But because Hurst is a sentenced inmate, the Eighth Amendment governs his claims that the defendants were indifferent to his safety and medical needs.   *See Darnell*, 849

F.3d at 29.   It is well-established that "[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims."   *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citation

omitted).   Because Hurst's Fourteenth Amendment claims focus on prison conditions and the

alleged lack of medical care he received while a sentenced inmate, I must dismiss his Fourteenth

Amendment substantive due process claims as not plausible.   28 U.S.C. § 1915A(b)(1).

### 2.    Eighth Amendment Violation

I next turn to Hurst's Eighth Amendment claims against Commissioner Quiros and

Warden Martin.   "Being violently assaulted in prison is simply not part of the penalty that

criminal offenders pay for their offenses against society."   *Farmer v. Brennan*, 511 U.S. 825,

834 (1994) (cleaned up).   Accordingly, the Eighth Amendment imposes on prison officials an

affirmative obligation to "take reasonable measures to guarantee the safety of the inmates" and

"to protect prisoners from violence at the hands of other prisoners."   *Id.* at 832-33 (cleaned up);

*see also Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (same); *Ayers v. Coughlin*, 780

F.2d 205, 209 (2d Cir. 1985) (citation omitted) ("The failure of custodial officers to employ

reasonable measures to protect an inmate from violence by other prison residents has been

considered cruel and unusual punishment.").

A plaintiff bringing an Eighth Amendment claim against a defendant for failure to protect

or deliberate indifference to the safety or serious medical needs of the plaintiff must allege facts

that suggest that the defendants acted not merely carelessly or negligently, but with a

subjectively reckless state of mind akin to criminal recklessness.   *See Hilton v. Wright*, 673 F.3d

120, 127 (2d Cir. 2012) (per curiam).   In other words, a plaintiff must allege that a defendant was aware of a substantial risk that the plaintiff would be seriously harmed if the defendant did not act.   *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Collazo*, 656 F.3d at 135.   But "[o]fficials need only be aware of the risk of harm, not intend harm."   *Spavone*, 719 F.3d at 138.

Commissioner Quiros and Warden Martin

Here, Hurst claims Commissioner Quiros and Warden Martin were responsible for the acts and omissions of other DOC employees.   Compl., Doc. No. 1, at 3.   He alleges that DOC employees failed to ensure that the utility closet in the Osborn G-Block was not accessible to inmates on November 27, 2025, the day of the attack.   *Id.* at 3-4.   He further maintains that the incident occurred because Commissioner Quiros and Warden Martin failed in their duties to properly train DOC employees and to ensure that DOC employees provide inmates with safe housing and medical treatment.   *Id.* at 4.   Hurst effectively seeks to impose liability on the defendants for their failure to adequately supervise DOC employees.

The Second Circuit has declared that "there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618.   Instead, a plaintiff proceeding with Section 1983 claims "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"   *Id.* (quoting *Iqbal*, 566 U.S. at 676).   "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'"   *Id.* at 616–17 (quoting *Iqbal*, 566 U.S. at 677).

Therefore, for a plaintiff to sustain a constitutional claim for liability against a supervisory government official, the defendants—"and not merely their subordinates—must

6

have engaged in unconstitutional conduct." *Reynolds v. Arnone*, 2025 WL 974843, at *11 (D. Conn. Mar. 31, 2025); *see also Calhoun v. Quiros,* 2024 WL 2846886, at *8 (D. Conn. June 5, 2024) (dismissing supervisory liability claim premised on information that had been passed up the chain of command or shared with supervisors). That means that in the Eighth Amendment context, a plaintiff must allege facts showing that a supervisory defendant "personally knew of and disregarded an excessive risk to [the plaintiff's] safety or health." *Tangreti*, 983 F.3d at 619.

Therefore, Hurst must allege facts to reflect that Commissioner Quiros and Warden Martin were aware that their conduct would cause Hurst to suffer a substantial risk of serious harm but nonetheless disregarded that risk. *Crispin v. Peiri*, 2023 WL 2931846, at *8 (D. Conn. Apr. 13, 2023). "Absent such allegations, the failure to supervise subordinates does not state a cognizable claim for supervisory liability." *Id.* (citation omitted).

Here, Hurst has not alleged any specific facts to suggest that Commissioner Quiros or Warden Martin were deliberately indifferent to Hurst's safety and medical needs. Hurst also does not plead facts to support an inference that Commissioner Quiros or Warden Martin were aware of a need for better supervision and training at a time relevant to Hurst's attack. *See Vaughn v. Baron*, 2024 WL 308511, at *3 (D. Conn. Jan. 26, 2024) (dismissing failure to train or supervise claim because there was no evidence that the defendant was personally involved in the application of handcuffs on the three inmates who attacked plaintiff); *Robinson v. Graham*, 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing claim against a supervisor for failure to train in part because the claim was "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims" that *Tangreti* rejected); *Boyd v. Larregui*, 2020 WL 5820491, at *7 (D.

Conn. Sept. 30, 2020) (dismissing claim for failure to train subordinates in part because the plaintiff failed to establish "personal involvement of supervisory defendant").

Hurst appears to assume that, because of their supervisory roles, Commissioner Quiros and Warden Martin are liable for any unconstitutional conduct by their subordinates.   But a plaintiff may not sue a defendant for a constitutional violation committed by another individual solely based on the defendant's "high position of authority in the prison system."   *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).

Because no alleged facts reflect that the defendants were personally involved in the deliberate indifference allegedly shown by DOC employees towards Hurst's safety and medical needs, I conclude that Hurst has not alleged plausible Eighth Amendment claims against Commissioner Quiros or Warden Martin.   Hurst's Eighth Amendment claims are therefore dismissed as not plausible.   28 U.S.C. § 1915A(b)(1).

## ORDERS

For the foregoing reasons, Hurst's complaint is dismissed for failure to state a plausible claim under 42 U.S.C. § 1983.

I afford Hurst one opportunity to file an amended complaint if he believes in good faith that he can correct the deficiencies of his claims as identified in this Initial Review Order.   Hurst must allege concise facts in numbered paragraphs to describe conduct that violated his rights by each defendant whom he wishes to hold liable for damages in this action.   In other words, Hurst must detail what each defendant did to him, when, and under what circumstances.   The case caption must name all defendants against whom Hurst asserts claims.

Hurst is also advised that an amended complaint, if filed, will completely replace the

original complaint, and the Court will not consider any allegations made in the original complaint but not made in the amended complaint in evaluating the claims in his amended complaint. A failure to submit his amended complaint on or before July 9, 2026 will result in dismissal of this matter.

The Clerk is instructed to send Hurst a copy of the District of Connecticut's approved prisoner *pro se* amended complaint form.

**SO ORDERED** at Bridgeport, Connecticut this 9th day of June 2026.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

9